## 698.  CARLISLE v. THE STATE.

In a prosecution for cheating and swindling through the making of false representations as to the ownership of property, an allegation in the indictment that the defendant knew that the representations made by him were false is a material allegation, and must be supported by the proof. As to this element of the charge in the present case, the testimony, which was circumstantial only, was too inconclusive to justify a conviction.

Accusation of cheating and swindling, from city court of La Grange—Judge Harwell. July 29, 1907.

Submitted October 9,—Decided October 15, 1907.

*E. T. Moon, D. B. Whitaker,* for plaintiff in error.

*Henry Reeves, solicitor,* contra.

PowELL, J. The indictment charged that the defendant "unlawfully did defraud and cheat W. A. Holmes in the sum of one hundred and twenty-five dollars, by reason of the following deceitful means and artful practice, to wit: . . said Carlisle and Burpee represented to said Holmes that said Carlisle owned a certain red-colored horse mule, for the purpose of selling said mule to said Holmes; and, relying upon said representation being true, he, the said Holmes, bought said mule from said Carlisle and Burpee, and paid therefor the sum of one hundred and twenty-five dollars, when said representations were false, and said Carlisle

and Burpee then and there knew were false, and intended to be false, the truth being that said Carlisle did not own said mule, which truth said Carlisle and Burpee then and there well knew; and, because of said false and fraudulent representations, said Holmes sustained loss as aforesaid," etc.

The evidence for the State shows that the defendant and one Burpee came to town leading the mule behind a buggy. The prosecutor asked the defendant what he would take for the mule, and made him an offer for it. The defendant said that he had bought the mule out of a drove, and that no one else had owned it since. He said that it was his own mule. In response to an inquiry as to the mule's eyes, he said, that he had worked the mule on his farm; that he bought it two or three years ago. Burpee also told the prosecutor that he had better buy the mule, that it would be a good trade; and finally the trade was closed at the original offer of $125. The prosecutor then delivered the mule into the care of one Cameron. About twelve months later, two men, one of them claiming to be the sheriff of an adjoining county, came and got the mule from Cameron. One Hendricks then testified that he was the man who went with the sheriff to Cameron's and got the mule; that it was his mule; that, shortly before the time the defendant sold the mule to the prosecutor, the mule had disappeared from his home in the adjoining county; that he did not know how he got away; that he had mortgaged the mule to Burpee and also to his cousin; that the mule was taken from Cameron's under the foreclosure of the mortgage which he had given his cousin; that while he did not know how the mule got away from his place, yet it was taken away without his consent; that he got home one night about eleven o'clock and found the lock to his barn broken and the mule gone. This was all the evidence for the State. The defendant stated that he bought the mule from Burpee out of a drove which Burpee had, and gave him $100 for it; that he did not know anybody had an interest in the mule or that anything was wrong with it; that he bought it in good faith and believed that it was his mule; that he told the prosecutor that he had bought the mule out of Burpee's drove, which was a fact.

In a prosecution of this kind, knowledge on the part of the defendant that the representation made by him is false is material;

a mere false statement by the defendant, accompanied by loss to the prosecutor, is not sufficient. While such knowledge may be proved indirectly or inferentially, yet the burden is upon the State to make it appear; and if the facts proved are consistent—reasonably consistent—with the defendant's lack of knowledge, he can not be convicted. The defendant, it is true, did state that he owned the mule, but he stated, in connection therewith, that he bought it out of a drove, and, according to the undisputed testimony, bought it out of Burpee's drove. Burpee was present when this statement was made, and, so far as the record shows, made no denial of this fact. While the statement of the defendant that he had owned the mule for two or three years was false, and, under the testimony, probably knowingly false, yet the length of time that he owned the mule was not material, in the state of his title. And while ordinarily the falsity of this statement might have had some probative value as tending to show a fraudulent design on the defendant's part, for the purpose of concealing the true state of his title, yet in the present instance this inference can not be legitimately indulged; because this statement as to the length of time he had owned the mule was not made in response to any inquiry as to the state of his title, but in response to an inquiry in regard to a defect in the eyes of the mule. If the prosecution had been based upon any fraud in connection with the condition of the mule's eyes, this statement would have been material and of strong probative value; but it was not so in the present case. There was no proof that the defendant did not buy the mule out of Burpee's drove, just as he said he bought it, that he paid $100 for it, and that he believed he owned it. That he did buy it out of Burpee's drove is corroborated somewhat by the fact that Burpee had a mortgage on the mule, as well as by the fact that, while the mule was taken from Hendricks' lot, in Hendricks' absence, he did not appear to set up the contention that the mule had been stolen from him; and this fact would further indicate that he recognized that the mule had probably been taken by Burpee under the mortgage, the act of seizure being made in Hendricks' absence. If the State had shown that the defendant did not buy the mule from Burpee's drove, or had shown circumstances indicating that he and Burpee had conspired and colluded together to sell a mule which he knew to have been unlawfully taken by Burpee, a

conviction could be sustained; but not so in the present state of the record.   See *Crawford* v. *State*, 117 *Ga.* 247, 252 (4) (43 S. E. 762).                                      *Judgment reversed.*