## Sanson v. Commonwealth.

October 10, 1950.

George K. Holbert, Judge.

Floyd K. Hollan for appellant.

A. E. Funk, Attorney General, W. Owen Keller, Assistant Attorney General, for appellee.

VAN SANT, COMMISSIONER—Reversing.

The appeal is from a judgment of conviction of the crime of obtaining money by false pretense. Appellant was a contractor engaged in building houses at the time of the alleged crime. He had contracted with Wayne Yates to construct a house according to certain plans and specifications at an agreed price of $3,500.00. After work was commenced, Mr. Yates caused a number of changes to be made in the original plans and specifications, but it is difficult to determine the extent of these changes because neither the original contract nor the plans and specifications were introduced in evidence.

Some changes were established with sufficient clarity to justify recitation. The overall dimensions of the house were 26' 6'' by 33' 6''. A half basement was changed to a full basement with a concrete floor; 6'' poplar weatherboarding was substituted for rock or asphalt siding; additional steps and entrances were made to the basement; a back porch was added; a porch running the full length of the house was substituted for a front stoop; hardwood flooring was substituted for pine; and other changes likely were made. Mr. Yates testified that appellant estimated the changes would increase the contract price to approximately $4,500.00. He was asked if he and the contractor had agreed on a price for the changes; he answered in the affirmative but failed to state what it was. Appellant testified that he had told Mr. Yates that the changes would raise the final contract price to an amount in excess of $5,000.00 but not over $6,000.00, and according to his figures, the cost to Mr. Yates would have been $5,785.03 had he been permitted to complete the building. The contract provided for periodic advancements by the owner to the contractor of sums equal to 90 per centum of the value of the materials used and labor employed as the work progressed. Previous to February 2, 1946, the owner had advanced to appellant sums aggregating $2,885.00. Appellant, at the same time, was constructing a house for another owner and obtained his lumber for both projects from the Jenkins-Essex Lumber and Building Company of Elizabethtown and the Vine Grove Lumber Company of Vine Grove. These companies were separately incorporated but were owned, or at least controlled, by the same stockholders. On the second day of February, appellant owed both companies, for materials obtained for both of his projects, the aggregate sum of $1,746.97; $237.31 of this amount was owed to the Jenkins-Essex Lumber and Building Company, and the balance to the Vine Grove Lumber Company. No evidence was introduced to establish the percentage of the aggregate debt incurred for materials which were used in the construction of the Yates house. Mr. Jenkins, representing both corporations, notified Mr. Yates through the latter's son, an employee of one of the corporations, that appellant was indebted to his companies and requested that no more money be advanced by Mr. Yates on the contract until appellant had satisfied the debts.

On the morning of February 2nd, appellant requested an advancement of $400.00 to meet the weekly payroll due that day. Mr. Yates testified that he called appellant's attention to the fact that there were bills owing the Vine Grove Company and the Jenkins-Essex Lumber and Building Company, and stated that he would advance no more money until the bills were paid, whereupon appellant told Yates "that he was owing them some but that he sent them a check that morning and everything was in the clear." He thereupon gave him two checks in the amount of $200.00 each. One of the checks was on an account which did not have a balance equal to the amount of the check, and appellant deposited $30.00 to the credit of the account in order to cash the check for the amount written on its face. Thus the actual money obtained was $370.00, some $20.00 less than the payroll, and all of which was applied to meet the payroll. Mr. Yates testified that had it not been for the representation that appellant had paid the outstanding debts for materials, which was false, he would not have advanced the money.

At the conclusion of the evidence appellant moved the court for a directed verdict of not guilty. The motion was overruled and an exception taken. The sole complaint on this appeal is that the court erred in overruling this motion.

Appellant's argument is that he cannot be guilty of the crime denounced by KRS 434.050, under which he was indicted, even though the jury should believe appellant made the statement attributed to him. He reasons that the money obtained was applied to a debt which Mr. Yates owed at that time under the advancement provision of the contract; that Mr. Yates knew he was going to apply the money to the payment of the payroll which the owner was required to advance; and appellant did apply it thereto. Even if under the advancement clause the owner were not required to meet the payroll, his failure to do so would have created a labor lien on the property in an amount in excess of the money obtained and for which Mr. Yates ultimately would have been liable, therefore the latter was not defrauded and the money was not procured with intent to defraud.

This contention presents a question which has not

previously been determined by this Court, although, in Commonwealth v. Ferguson, 135 Ky. 32, 121 S.W. 967, 24 L.R.A.,N.S., 1101, 21 Ann.Cas. 434, we held that it is immaterial whether the person to whom the false pretense was made actually or ultimately suffered a loss. In that case the court was presented with the sole question of the sufficiency of the indictment which charged that the money was obtained with the intention to defraud. Our question arises on the sufficiency of the evidence in proof of intention to defraud; that is to say, whether one can have an intention to defraud when the person to whom he makes a false statement cannot suffer a loss by reason of parting with the money paid in reliance of the statement, and when the person to whom the false pretense is made knows the money is to be applied to the very debt he owes.

It is conceded by the Commonwealth that the money obtained on the occasion complained of was used for the purpose disclosed, and the application of the money to the payroll reduced the ultimate liability of Mr. Yates to the men who had performed work on his house by an amount at least equal to the sum he parted with. The evidence does not show that in the final settlement Mr. Yates would have owed appellant less than the amount obtained on February 2nd, plus the accounts with the two lumber companies which Yates paid at a later date. The burden of showing guilt remained with the Commonwealth throughout and it failed to show that there was even a possibility for Mr. Yates to have been defrauded.

In 22 American Jurisprudence, Section 34, Pages 463 and 464, it is noted that there is a conflict of authority as to whether obtaining money by false pretenses with the *concealed* purpose of applying it on a debt due the deceiver by the deceived constitutes the crime of obtaining property by false pretenses, and which we conceive to be more reprehensible conduct than that charged in this case. The majority view in that character of case holds the deceiver criminally liable, whilst the minority view absolves him since no actual injury has been inflicted on the defrauded person by making him pay his honest debt . The writer of the text in American Jurisprudence notes the distinction between a situation where the debtor knows he is paying his debt although induced to do so by false pretenses and where he is led to believe

that he is parting with the money or property for some other purpose and the deceiver secretly intends to and does apply it on the debt. The text concludes with the following statement:

"Of course, where a debt is unliquidated the creditor cannot, without criminal liability, seek by false pretenses to obtain a larger amount than justly due."

Whether we would adopt the majority or minority rule in respect to a case where the debtor has been led to believe he will receive a benefit other than the mere application of the money to his debt has no bearing on our conclusion in respect to the question here to be determined. We therefore will refrain from an expression of our inclination in that regard. We have no hesitancy however, in adopting the rule invoked in this case; viz., that where a creditor induces the debtor by false pretenses to pay a debt which the debter knows he is paying, the deceiver has committed no criminal offense because there could have been no intention to injure or cheat the person so deceived. Where, as here, the debt is unliquidated, a showing by the Commonwealth that the debtor has been induced to part with a larger amount than is justly due will create a circumstance from which the jury reasonably might infer that there was an intention on the part of the deceiver to defraud the deceived; and in such event that issue should be submitted to the jury. But where the Commonwealth has failed to produce evidence to show the existence of such circumstance, it has failed to make an issue; and, since the burden is on the Commonwealth, a peremptory instruction should be given.

The judgment is reversed for proceedings not inconsistent with this opinion.